*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





## OPINION

No. 04-10-00716-CV

**TEXAS REAL ESTATE COMMISSION**,
Appellant

v.

Mariaora **BUCURENCIU**,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 081207A
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice

Delivered and Filed:  August 31, 2011

REVERSED AND RENDERED

This appeal arises from the trial court's order directing payment to appellee from the

Texas Real Estate Recovery Trust Account ("RERTA"), which is administered by appellant.[1]

## BACKGROUND

Appellee, Mariaora Bucurenciu, is a resident of California.    Appellee engaged the

services of William McKinley, who is a salesperson licensed by the Texas Real Estate

---

[1] Under the Texas Occupations Code, the Texas Real Estate Commission is obligated to "maintain a real estate recovery trust account to reimburse aggrieved persons who suffer actual damages" caused by the actions of a real estate salesperson.  *See* TEX. OCC. CODE ANN. § 1101.601(a)(1) (West 2004).

Commission (the "Commission") and a mortgage broker licensed by the Texas Department of Savings and Mortgage Lending (the "Department"). According to appellee's affidavit, she retained McKinley to "solicite[] and facilitate[] a lending relationship between [herself], as lender, and [two] borrowers located in Kerr County[, Texas]."[2] Appellee lent the borrowers $55,000 for what she believed would be the purchase of a lot of land and a mobile home. The loan was secured by a first lien on the property, and called for interest-only monthly payments with a principal balloon payment. Appellee later discovered the borrowers used the money to refinance a previous $19,000 purchase-money lien on the property and to pay other debts. The property was the borrowers' homestead and the loan amount exceeded the fair market value of the property at the time.

After the borrowers failed to make any payments on the loan, appellee sued McKinley for common law and statutory fraud, alleging he made material misrepresentations of fact. Because McKinley was served by publication and did not appear, the trial court appointed an attorney to defend the suit on his behalf pursuant to Texas Rule of Civil Procedure 244. Appellee obtained a default judgment and an award of over $50,000. Also pursuant to Rule 244, the trial court approved and signed a "statement of the evidence."

Unable to execute on her judgment, appellee filed with the trial court an application for an order directing payment from the RERTA.[3] The Commission opposed appellee's request for relief, arguing the RERTA does not cover mortgage-only transactions. The Commission also

---

[2]  In their affidavits, the borrowers make the same contentions.

[3]  Appellee also applied for relief from the Texas Savings and Mortgage Lending Department Recovery Fund (the "Mortgage Fund"). The Department determined appellee was not entitled to recovery. Appellee appealed, and the matter is currently under submission to an administrative court in Austin, Texas. Therefore, recovery from the Mortgage Fund is not at issue in this appeal.

stated its intent to "relitigate" the underlying case.[4] Following a hearing on appellee's application, the trial court determined the RERTA covered McKinley's actions and signed a judgment ordering payment to appellee in the amount of $50,000 from the fund. The Commission now appeals.

**DISCUSSION**

On appeal, the Commission argues (1) the Occupations Code expressly provides that the term "real estate" does not include an interest given as security for the performance of an obligation and (2) this record establishes that the underlying case concerned a mortgage transaction and not a real estate transaction. Thus, the Commission concludes, the RERTA does not cover the type of fraud alleged by appellee, more specifically, mortgage fraud. The Commission also asserts it is not bound by a trial court finding that McKinley was acting as a real estate "salesperson."

The RERTA is maintained by the Commission to reimburse "aggrieved persons who suffer actual damages caused by an act described in Section 1101.602 committed by . . . a license holder." TEX. OCC. CODE ANN. § 1101.601(a)(1) (West 2004).[5] A "license holder" "means a broker or salesperson licensed under this chapter." *Id.* § 1101.002(4). Here, there is no dispute that McKinley is a licensed real estate salesperson and there is no dispute his actions caused appellee to suffer damages. The issue is whether McKinley was acting in the capacity of a real estate "salesperson" as defined by the Texas Occupations Code when he committed the

---

[4] The Occupations Code allows the Commission to "relitigate in the hearing [on the application for payment from the RERTA] any material and relevant issue that was determined in the [underlying] action that resulted in the judgment in favor of the aggrieved person." TEX. OCC. CODE § 1101.608(c).

[5] Section 1101.602 provides as follows: "An aggrieved person is entitled to reimbursement from the trust account if a person described by Section 1101.601 engages in conduct described by Section 1101.652(a)(3) or (b) or 1101.653(1), (2), (3), or (4)." TEX. OCC. CODE § 1101.602. The applicable conduct here is conduct that is dishonest, in bad faith, demonstrates untrustworthiness, and includes pursuing a course of misrepresentation. *See id.* § 1101.652(b).

complained-of acts. This presents a question of statutory construction, which we review de novo. *State v. Shumake*, 199 S.W.3d 279, 285 (Tex. 2006).

The Occupations Code defines "salesperson" to mean "a person who is associated with a licensed broker for the purpose of performing" any of the following acts:

(i) sells, exchanges, purchases, or leases real estate;
(ii) offers to sell, exchange, purchase, or lease real estate;
(iii) negotiates or attempts to negotiate the listing, sale, exchange, purchase, or lease of real estate;
(iv) lists or offers, attempts, or agrees to list real estate for sale, lease, or exchange;
(v) appraises or offers, attempts, or agrees to appraise real estate;
(vi) auctions or offers, attempts, or agrees to auction real estate;
(vii) deals in options on real estate, including buying, selling, or offering to buy or sell options on real estate;
(viii) aids or offers or attempts to aid in locating or obtaining real estate for purchase or lease;
(ix) procures or assists in procuring a prospect to effect the sale, exchange, or lease of real estate; or
(x) procures or assists in procuring property to effect the sale, exchange, or lease of real estate . . . .

*Id.* § 1101.002(1)(A).

Thus, the Occupations Code defines "salesperson" "as a person who takes certain actions in relation to 'real estate.'" *Tex. Real Estate Comm'n v. Rodriguez*, ___ S.W.3d ___, No. 04-09-00681-CV, 2010 WL 2403721, at *2 (Tex. App.—San Antonio June 16, 2010, pet. denied). On appeal, appellee contends the underlying transaction "had everything to do with real estate" because McKinley "put together a relationship under which [appellee] provided funds for what she believed was the purchase of real estate and improvements." According to appellee, from the borrowers' standpoint, McKinley enabled the borrowers "to obtain the purchase money for real estate." Appellee also argues that had McKinley been selling, exchanging, purchasing, or leasing "existing mortgages to investors *in a secondary market*, that conduct" would be excluded from the scope of the definition of "real estate." (Emphasis added.) But, appellee concludes,

because McKinley was not acting in the "secondary market," his actions are within the scope of the definition of "real estate." We disagree with appellee's arguments.

Our task here is to interpret the governing legislation as it is written, and not to "refine legislative choices." *See Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 847 (Tex. 2009). "It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose . . . [and] we believe every word excluded from a statute must also be presumed to have been excluded for a purpose." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). "The cardinal rule of statutory construction is to ascertain and give effect to the Legislature's intent." *Klein v. Hernandez*, 315 S.W.3d 1, 6 (Tex. 2010).

The Occupations Code defines "real estate" to mean "any interest in real property, including a leasehold, located in or outside this state. *The term does not include an interest given as security for the performance of an obligation.*" TEX. OCC. CODE § 1101.002(5) (emphasis added). One such type of interest "given as security" is a "mortgage," which is defined as "a conveyance of title to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms." BLACK'S LAW DICTIONARY 1031 (8th ed. 2004). In her own affidavit, appellee conceded she retained McKinley to "solicite[] and facilitate[] a *lending relationship* between [herself], as lender, and [two] borrowers located in Kerr County[, Texas]." [Emphasis added.] Appellee admitted the loan was secured by a first lien on the property, and called for interest-only monthly payments with a principal balloon payment. Appellee also alleged McKinley "did business as Home Ownership Made Easy Mortgage."

However, despite appellee's above admissions, the trial court apparently relied, at least in part, on the following statement made by appellee in her affidavit and incorporated into her "Plaintiff's Statement of Evidence": "*Acting as* a mortgage broker and *a real estate salesperson*, McKinley solicited and brokered a lending relationship . . . ." [Emphasis added.] At the underlying hearing, appellee argued the trial court was bound by its finding in the Statement of Evidence that McKinley was "acting as . . . a real estate salesperson," and therefore, his conduct was within the scope of the actions prohibited by the Occupations Code. The Commission argued it should be allowed to relitigate any material facts, and, even if the Statement of Evidence was accepted by the court, the statement that McKinley was acting as a real estate salesperson amounts to nothing more than a conclusory statement. We agree with the Commission that the statement that McKinley was acting as a real estate salesperson is a conclusory statement unsupported by the evidence, and in fact, is contradicted by the evidence.

Whether McKinley acted in the capacity of a real estate salesperson when he made material misrepresentations of fact must be determined by whether he committed those misrepresentations while performing any one of the actions listed in Occupations Code section 1101.002(1)(A), which as stated above defines a "salesperson."[6] All of those actions pertain to "real estate" and that term specifically excludes "an interest given as security for the performance of an obligation." TEX. OCC. CODE § 1101.002(5). We conclude McKinley's actions were to facilitate a lending relationship that involved only "an interest given as security for the performance of an obligation," and as such, his actions did not pertain to "real estate" as that term is statutorily defined. Accordingly, McKinley was not acting in the capacity of a real estate "salesperson."

---

[6] For example, an individual may violate Occupations Code chapter 1101 by making a material misrepresentation while selling, exchanging, purchasing, or leasing real estate.

## CONCLUSION

Because appellee was not aggrieved by the actions of someone acting in the capacity of a real estate "salesperson," she is not entitled to recovery from the RERTA.  Therefore, we reverse the trial court's order and render a take-nothing judgment in favor of the Commission.

Sandee Bryan Marion, Justice